UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No. 20-cr-171 (TNM) |
| : | |
| Frank J. Caporusso : | |
| : | |
| Defendant. : | |

## GOVERNMENT'S MEMORANDUM
## IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this Memorandum in support of its Motion for Pretrial Detention of Defendant Frank J. Caporusso (hereinafter "defendant"), detained pending trial under 18 U.S.C. §§ 3142(f)(1)(A) and 3142(f)(2)(A).

On August 26, 2020, the defendant was charged in a two-count indictment with one count of threatening to assault and murder Victim One, a District Judge for the United States District Court for the District of Columbia, with intent to impede, intimidate, or interfere with Victim One in the performance of Victim One's official duties in violation of 18 U.S.C. § 115 (a)(1)(B) (Count One), and one count of willfully and knowing transmitting in interstate commerce a communication which contained a threat to injure the person of another, namely to assault and kill Victim One, District Judge for the United States District Court for the District of Columbia, with the knowledge that the communication would be viewed as a threat in violation of 18 U.S.C. § 875 (c) (Count Two). The defendant poses a clear threat to public safety and a risk of flight, and he should be detained pending trial.

## APPLICABLE LAW

A defendant must be detained pending trial, if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(e). A finding of either risk of flight or danger is sufficient for detention. *See, e.g., United States v. Ferranti*, 66 F.3d 540, 543-44 (2nd Cir. 1995). For a detention decision based upon a defendant's dangerousness, the government must prove by clear and convincing evidence that there are no conditions or combinations of conditions that will assure the safety of the community. *See* 18 U.S.C. § 3142(f); *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996). For a detention decision based upon risk of flight, the government only need prove by a preponderance of the evidence that there are no conditions or combinations of conditions that will assure the defendant's appearance as required. *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986); *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996). Furthermore, at a detention hearing, the government may present evidence by way of a proffer. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

In considering whether there are conditions of release, which will reasonably assure the safety of any other person and the community, and the appearance of the defendant as required, the Court should consider and weigh the following factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). As set forth more fully below, these factors weigh in favor of detaining the defendant.

**FACTUAL AND PROCEDURAL BACKGROUND**

On May 15, 2020, Deputy United States Marshal (DUSM) McKinney discovered threatening statements made against Victim One and his staff while listening to voicemails left on Victim One's Chambers' telephone line, which were forwarded via email attachments from Victim One's staff. One voicemail, which recorded a male caller speaking for approximately 30-31 seconds, stated:

> We are professionals. We are trained military people. We will be on rooftops. You will not be safe. A hot piece of lead will cut through your skull. You bastard. You will be killed, and I don't give a fuck who you are. Back out of this bullshit before it's too late, or we'll start cutting down your staff. This is not a threat. This is a promise.

A digital audio file recording is submitted as Exhibit A to this memorandum.

The threatening statements, in context, appeared to be in reference to Victim One's presiding over a pending criminal case. The threatening voicemail message was left by an unknown sender with no caller ID on May 14, 2020 at approximately 8:24 p.m.

Data provided by AT&T for the Chambers' phone line, revealed that a particular phone number ending in 1255 called Chambers at approximately 8:23 p.m. with a call duration of approximately 40-41 seconds.  The voicemail message is approximately 30-31 seconds long. A review of other voicemails left on the Chambers' line that evening showed that the audio duration of a voicemail was approximately 10 seconds shorter than the call duration reflected on the AT&T call log for the Chambers' phone line, reflecting the length of time a caller must be on the line before the recording begins. According to subscriber information from AT&T, the number, 1255, is registered to the defendant and the bill has been paid by the defendant since

2003.[1]

Additionally, call logs for the defendant's telephone number provided by AT&T showed that the called the Chambers' phone line multiple times on the date and around the time the threatening voicemail message was left, which matched the incoming calls to the Chamber's phone line previously provided by AT&T. He also called the Chambers' phone line at least twice again the next evening, May 15, 2020.[2] The AT&T call logs also indicate that the defendant used the code "NIOR" (Calling Number Identity Restriction) only for the calls going to Chambers.

On May 20, 2020, Deputy United States Marshal Ian Kangas and a Suffolk County Police Officer interviewed the defendant at his home in Manorville, New York. The defendant took a few minutes to come downstairs to speak, and when he did, he acknowledged that the telephone number ending in 1255 was his phone number, but he denied calling any judges or making any threats.

Deputy Kangas informed the defendant that his phone number was recorded as having called a judge's Chambers. The defendant denied it was him and said it was possible for people to "spoof" or make it appear like a call was placed from a certain number. Deputy Kangas asked if he could see the defendant's call log to verify the Judge's number was not there. The defendant initially declined and said he had a right to privacy. The defendant then pulled out his phone and appeared to show Deputy Kangas briefly what looked like a blank call log screen. The defendant said he set his phone not to record calls on his call log because of the nature of his job and that he

---

1 There were two numbers that called the Chambers' phone line between approximately 8:22-8:24 that evening. In addition to the number ending in 1255, another number called around the same time with a call duration of approximately 73-74 seconds. Investigation revealed that number belonged to a woman in Austin, Texas. On August 21, 2020, Deputy United States Marshals interviewed the woman and her ex-husband (who was in possession of the phone) in Austin. The man admitted to calling Chambers on May 14, 2020, but denied making any threats. According to the Deputy United States Marshals, the man had a very thick Texas accent and did not sound like the individual who left the voicemail.
2 There do not appear to be other voicemails, because the voicemail system was turned off on the afternoon of May 15, 2020.

could not risk anyone accessing information from his phone. He also said that he does not have Bluetooth activated on his phone as people can be outside his house and steal all the information on it.  When asked if his call records would show he called the Judge's chambers, he again denied calling the Judge and said his records would show he calls a lot of business people for work. He said it must have been someone else who called the Judge.  The defendant admitted that he owns long guns, but he said he had no plans to travel to Washington, D.C.

According to Deputy Kangas, the defendant's voice is consistent with the voice of the individual who left the voicemail, although he never spoke to Deputy Kangas in the same threatening tone heard on the voicemail.  During the interview, the defendant also appeared to smirk several times when asked about the call and when providing the explanation about someone making the call look like it came from his number.  He was observably sweating during the interview, and suggested, without being asked, that this was because he just got out of the shower.  He also seemed to be out of breath at certain points during the conversation, and said, again without being asked, that this was because he had asthma.

Cell site data for the defendant's number showed that the calls placed to Chambers on May 14, 2020 from his phone appear to have been placed from the defendant's home.  Further analysis of the returns also showed that the defendant was sending text messages around the same time the calls were placed to Chambers.  Thus, when the defendant called Chambers, he was using interstate communications between New York and Washington, D.C.

Investigation also revealed social media accounts that appear to belong to the defendant. These accounts, primarily a Twitter account, contain posts and images calling various politicians and celebrities "morons" and "sycophants."  The last "tweets" were sent on July 3, 2020. Additionally, a twitter reply was sent at 10:48 p.m. on May 14, 2020 (the same evening the

voicemail was left).

On August 31, 2020 the defendant was arrested at his home in Manorville, NY—where a number of weapons were also recovered as depicted in the photo below, which was previously disclosed to defense counsel.



On the same date, he appeared before United States Magistrate Judge Anne Y. Shields of the Eastern District of New York, who ordered him removed to the District of Columbia in custody.

**ARGUMENT**

**I.      18 U.S.C. § 115 is a Crime of Violence**

For the purposes of the Bail Reform Act ("BRA") and as applicable here, a crime of violence is defined as an "offense that has as an element the use, attempted use, <u>or threatened use</u> of physical force against the person or property of another." *See* 18 U.S.C. § 3156(a)(4)(A) (emphasis added). *Accord Sessions v. Dimaya*, 138 S. Ct. 1204, 1256 (2018) ("Section 16(a) covers offenses that have the use, attempted use, or threatened use of physical force "as an element.").

Under the Supreme Court's categorical approach to analyzing whether particular crimes are crimes of violence, a court must compare the statute at issue with the relevant federal definition, examining only the statute's elements, not the actual facts underlying the crime. *Taylor v. United States*, 495 U.S. 575, 600 (1990); *United States v. Singleton*, 182 F. 3d 7, 10-11 (D.C. Cir. 1999) (holding that the categorical approach must be applied in analyzing whether the charged crime qualifies as a qualifying offense for the purposes of the BRA and identifying cases where other circuits have used it in analyzing § 16 outside of the sentencing context). Where the statute at issue encompasses conduct that both does and does not meet the federal definition, then it is not a crime of violence. *See United States v. Haight*, 892 F. 3d 1271, 1280 (D.C. Cir. 2018) (applying the categorical approach to determining whether a prior conviction is a "violent felony" for the purposes of the Armed Career Criminals Act ("ACCA") and noting that a violent felony will be found where, inter alia, the prior conviction, like under § 16(a), "has as an element the use, attempted use, or threatened use of physical force against the person of another.") Where a statute is divisible, the "modified categorical approach" applies, by which the categorical analysis is performed only against the relevant divisible part of the statute. *United*

*States v. Sheffield*, 832 F. 3d 296, 314 (D.C. Cir. 2016). A statute is divisible if it "list[s] potential offense elements in the alternative." *Id.* *See also Mathias v. United States*, 136 S. Ct. 2243, 2256 (2016) ("if statutory alternatives carry different punishments, then . . . they must be elements.").

Here, the statute is divisible, because 18 U.S.C. § 115 criminalizes different fully realized crimes: assault, kidnapping, and murder of certain individuals, as well as the attempt to commit any of those crimes, or threatening to commit any of those crimes. In doing so, it provides for multiple punishments depending on which specific crime is at issue. *Compare* § 115(b)(1) (four different prison terms depending on the level of the assault), § 115(b)(1)(2) (penalty for all kidnapping charges), § 115(b)(3) (penalties for all murder charges), and § 115(b)(4) (proscribing a ten year imprisonment for any threat made under the statute, except that imprisonment for threatened assault shall be limited to six years). Consequently, § 115 is divisible. *See United States v. Bundy*, 2017 U.S. Dist. LEXIS 14728 (D. Nev. Feb. 2, 2017) (finding § 115 divisible and the "threat of assault" alternative to be a crime of violence for the purpose of the ACCA).

It is clear that murder is a crime of violence, see, e.g., *United States v. Williams*, 946 F. Supp. 2d 112, 115 (D.D.C. May 24, 2013) (second degree murder); *United States v. Y.A.*, 42 F. Supp. 3d 63, 76 (D.D.C. Feb. 11, 2013) (first degree murder), because it necessarily has as an element the use of physical force; and threatening to commit murder therefore falls within the "threatened use of physical force" provision of the statutory definition of crimes of violence. Accordingly, and as noted above, at least one court has found that "threatening to assault" under 18 U.S.C. § 115 is a crime of violence, *see Bundy*, 2017 U.S. Dist. LEXIS 14728 at *16 (for the purpose of the ACCA), and a magistrate judge for the District of Columbia District Court recently held that threats to assault or murder under 18 U.S.C. § 115(a)(1)(B) are crimes of

violence. *See United States v. Kevin Foti*, 19-cr-00173-RC, Document 16, *9 (D.C. June 7, 2019).

For the foregoing reasons, the Court should find that Count One constitutes a crime of violence and therefore give rise to a basis for a detention hearing under 18 U.S.C. § 3142 (f)(1)(A).[3]

## II. The Defendant Should Be Detained Pending Trial Because He Poses a Danger to the Community and a Substantial Risk of Flight.

In light of the conduct in this case, the defendant's continued danger to the community, the fact the defendant is facing substantial time of imprisonment, and the fact the defendant has no known ties to Washington, D.C., pretrial detention is necessary to ensure both the safety of the community and that the defendant does not flee to evade prosecution.

### A. The Nature and Circumstances of the Offense

The nature and circumstances of the offense weigh in favor of detention for several reasons.

The grand jury found probable cause to believe that the defendant committed a crime of violence. The voicemail that defendant left for a federal judge and his staff contains graphic and specific threats to kill Victim One by putting a "hot piece of lead" through his skull. Such conduct is unspeakably extreme and clearly calculated to intimidate a judge and those who work for him by putting them in fear of death. Additionally, the defendant's call logs and cell site data indicate that he tried to block his number to mask his identity and escape detection, and he lied to law enforcement officials about his conduct. In light of the very real and persistent danger of violence against the federal judiciary and others involved in the criminal justice system, such extraordinary

---

3 As defendant is charged with two crimes, only one need be deemed to be a crime of violence in order to justify a request for detention hearing under §314(f)(1)(A).

conduct must be treated with the greatest seriousness.

Consideration of the nature and circumstances of the offense also requires the Court to weigh the possible penalty the defendant faces upon conviction. *See United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990). Indeed, the seriousness of the defendant's crime is reflected in the sentence he will face when convicted—up to 10 years of imprisonment on Count One and up to 5 years of imprisonment on Count Two—and that potential sentence provides him a powerful motivation to flee from justice.

### B. The Weight of the Evidence Against the Defendant

The weight of the evidence against the defendant is overwhelming. Call logs from the defendant's telephone service provider show that the defendant placed a call to Chambers that coincides with the timing and duration of the threatening voicemail. Cell site data places the call as coming from the defendant's home. The weight of the evidence heavily favors detention

### C. The History and Characteristics of the Defendant

The defendant appears to have no criminal history, but his conduct before and after leavening the threatening voicemail weigh in favor of detention. His call records show numerous attempts to reach Chambers, with his own number blocked, such that the call in which he left a threat to murder the Judge and his staff was evidently not a momentary (albeit extraordinary) lapse of judgment. Additionally, the defendant lives in New York with no known ties to Washington, D.C., which heightens the risk that he will fail to appear to answer the charges in Washington but will attempt to flee from justice. Given the substantial penalties he faces if convicted at trial, the defendant has abundant incentive to flee.

**D. The Nature and Seriousness of the Danger to any Person or the Community Posed by Release**

The nature and seriousness of the danger posed by the person's release also weigh in favor of detention.  The defendant has been indicted for a crime of violence that poses a physical danger to the community.  His conduct was evidently motivated by the defendant's anger about a pending criminal matter before Victim One.  The defendant has established his willingness to threaten extraordinary violence with graphic specificity in order to thwart the operation of justice contrary to the defendant's wishes.  There is sufficient reason to fear that the defendant will be similarly motivated with respect to his own case now that he has been indicted; and the matter that evidently motivated his threat to Victim One remains pending.   The defendant's release therefore poses a danger to Victim One, his staff, and others among the public that the defendant will make further threats or carry out such a threat.  Moreover, the defendant's threat expressly involved a commitment ("This is not a threat.  This is a promise.") to carry out a public act of extreme violence ("We will be on rooftops.  You will not be safe.  A hot piece of lead will cut through your skull.  You bastard.  You will be killed, and I don't give a fuck who you are.  Back out of this bullshit before it's too late, or we'll start cutting down your staff."), which puts court staff and members of the public at risk.

Given the defendant's conduct, he has demonstrated that he poses a serious risk to the safety of the community.  This factor therefore also weighs heavily in favor of detention.

## CONCLUSION

For the reasons noted above, the government respectfully submits that clear and convincing evidence establishes that there are no conditions or combinations of conditions that will reasonably assure the safety of any other person and the community. The government also submits that a preponderance of the evidence establishes that the defendant is a serious risk of flight and no

conditions or combinations of conditions will assure his appearance in Court. Accordingly, the government respectfully requests that the Court grant the government's motion to detain the defendant pending trial in this case.

      Respectfully submitted,

      MICHAEL R. SHERWIN
      Acting United States Attorney
      N.Y. Bar No. 4444188


By:    /s/   RAF
      RACHEL A. FLETCHER
      Assistant United States Attorney
      TX Bar No. 24078505
      Violent Crime and Narcotics Trafficking Section
      555 4th Street, N.W., Room 4840
      Washington, D.C.  20530
      Office: (202) 252-7093
      Rachel.Fletcher@usdoj.gov


## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2020, a copy of the foregoing Memorandum was sent via email to counsel for the defendant.

      /s/   RAF
      Rachel A. Fletcher
      Assistant U.S. Attorney