**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 1:20-cr-171-001 (TNM)** |
| **FRANK J. CAPORUSSO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

## I.   INTRODUCTION

Frank Caporusso, by and through undersigned counsel, respectfully files this Memorandum in Aid of Sentencing.  Mr. Caporusso comes before this Honorable Court shocked and disgusted by the actions that have brought him before the Court following his acceptance of responsibility upon entering a plea of guilty to one count of Influencing, Impeding, or Retaliating Against a Federal Official by Threat, in violation of 18 U.S.C. § 115(a)(1)(B). *See* PSR.  He is extraordinarily remorseful for the damage he has caused to the victim, the victim's family and staff, to the community at large, and to his own family.

### *Frank Caporusso's Background*

Mr. Caporusso was born in New York, and is the proud son of Italian immigrants. *See* PSR and Exhibit A. He was raised in the Catholic faith and continues to be a devout practitioner to the present day. *Id*. Mr. Caporusso  lives his life by the values of "hard work and kindness." *Id*. He grew up in what he describes as a "special home" because his youngest sibling is developmentally disabled.  Looking after his brother and becoming his legal guardian after his father passed away in 2010   impacted Mr. Caporusso's life in a positive way. *Id*. Mr. Caporusso met his wife in "chemistry class in high school," and they will have been married for thirty-one (31) years this August. *Id*. Mr. Caporusso has two adult children of whom he is extremely proud

1

and he looks forward to continuing to supporting their education upon his release. *Id*. Mr. Caporusso began his career in the sales and electronics field over twenty-six (26) years ago, and he is responsible for over sixty (60) percent of his current company's revenues. *Id*. Mr. Caporusso is a loving and caring husband, father, brother, and co-worker, and these characteristics are clearly evident by the twenty-three (23) letters of support submitted to this Court as part of this memorandum. *See* Exhibits B-X. Repeatedly, those who know him state that the instant offense is out of character with the man they love, know, respect, and support. *Id*.  As such, each expresses considerable surprise that Mr. Caporusso committed the criminal offense in this matter, for which he has accepted full responsibility. *Id*.

### *Sentencing Request*

Based upon Mr. Caporusso's personal history and character, the nature and circumstances of the offense, his lack of criminal history, the almost eleven (11) months of incarceration he has already served, and the almost nonexistent likelihood of recidivism, Mr. Caporusso respectfully requests that the Court impose a sentence of time served. Such a sentence would be "sufficient, but not greater than necessary" to achieve the legitimate purposes of sentencing. *See* 18 U.S.C. § 3553(a).

## II.     THE LEGAL FRAMEWORK OF AN ADVISORY GUIDELINE RANGE

While this Court must still correctly calculate the guideline range, *Gall v. United States*, 552 U.S. 38, 49 (2007), it may not treat that range as mandatory or presumptive, *Id.* at 51; *see also Nelson v. United States*, 555 U.S. 350, 352 (2009), but as "one factor among several" to be considered in imposing an appropriate sentence under § 3553(a).  *Kimbrough v. United States*, 552 U.S. 85, 90 (2007).  The Court must "consider all of the § 3553(a) factors," "make an individualized assessment based on the facts presented," *Gall* at 49-50, and explain how the facts

relate to the purposes of sentencing. *Id*. at 53-60; *See also Pepper v. United States*, 131 S. Ct. 1229, 1242-43 (2011). The Court's "overarching" duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough* at 101; *Pepper* at 1242-43.

In order to ensure that the guidelines are truly advisory and constitutional, this Court has the authority to disagree with a guideline as a matter of policy. Because "the Guidelines are now advisory . . ., as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough*. at 101-02 (internal punctuation omitted) (*citing Rita v. United States*, 551 U.S. 338, 351 (2007) (holding that district courts may find that the "Guidelines sentence itself fails properly to reflect § 3553(a) considerations").

Additionally, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). Permitting sentencing courts to consider the widest possible breadth of information about a defendant "ensures that the punishment will suit not merely the offense but the individual defendant." *Pepper* at 1240 (citing *Wasman v. United States*, 468 U. S. 559, 564 (1984)).

In this regard, "the district court's job is not [even] to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." *United States v. Foreman*, 436 F.3d 638, 644, n.1 (6th Cir. 2006). Accordingly, "if a district court were explicitly to conclude that two sentences equally served the statutory purpose of § 3553, it could not, consistent with

the parsimony clause, impose the higher." *United States v. Ministro-Tapia*, 470 F.3d 137 (2d

Cir. 2006).

## III.    THE U.S. SENTENCING GUIDELINES

According to the plea agreement and the PSR in this matter, the parties agree that the

following Sentencing Guidelines sections apply:

**2018 Guidelines**

18 U.S.C. § 115(a)(1)

| | |
|---|---|
| USSG § 2A6.1(a)(1) – Base Offense Level | 12 |
| USSG § 3A1.2(b) – Specific Offense Characteristic – Official Victim | + 6 |
| Subtotal | 18 |
| Acceptance of Responsibility USSG §3E1.1(a) | -2 |
| Acceptance of Responsibility USSG §3E1.1(b) | -1 |
| **TOTAL OFFENSE LEVEL** | **15** |

Mr. Caporusso has a criminal history score of zero and a criminal history category of I

for sentencing purposes. *See* PSR ¶ 26. This results in a total offense Level of 15, which

combined with a Criminal History Category of I, produces an advisory guidelines range of 18-24

months. *Id*. at ¶ 4, 73.  As part of the plea agreement in this matter, the government has agreed to

cap its sentencing allocution at the bottom of the applicable guidelines range. *See* Plea

Agreement, p. 4, ¶ 5.  .  Mr. Caporusso was arrested on August 31, 2020 and been held without

bond since that date.


## IV.    18 U.S.C. § 3553(A) FACTORS

### A.  The Nature and Circumstances of the Offense.

Mr. Caporusso's involvement in the instant offense is both inexcusable and

extraordinarily regrettable. As stated in Mr. Caporusso's letter to the Court, "these circumstances

have caused great regret and remorse in that all I have struggled for can be taken from me as well as my family – a family who in no way deserves this or caused it." *See* Exhibit A. Further, Mr. Caporusso writes that he is "wrought not being able to serve and support my family … not being able to be who I was is extremely painful." *Id*. He continues, "I wish there was something more than just an apology I could offer Judge Sullivan. I am completely sorry for what happened." *Id*.

Although Mr. Caporusso accepts responsibility and understands his conduct was inexcusable; it is important to put into context what was going on in Mr. Caporusso's life that led up to the instance offense. In January, 2020, Mr. Caporusso broke his left arm in several places by "slipping on the driveway while cleaning my wife's car." *Id*. Mr. Caporusso tells the Court "I would spend four (4) months in a brace and two (2) months on pain medication." *Id*. This was a challenging injury because Mr. Caporusso was already becoming increasingly stressed at work – he had "no back up." *Id*. Then, the COVID-19 pandemic swept over the world and put everyone in lockdown. *Id*. Mr. Caporusso was lucky enough to keep his job and his business    actually increased because of increased demand in electronic components in ventilators that were being rapidly produced. *Id*. This did, however, increase his stress levels significantly as he worked more and more hours. *Id*. As Mr. Caporusso slowly began to heal, the lockdowns continued, and he became increasingly dependent on alcohol. *Id*. "I had never had an issue with alcohol in my life, I can say that my consumption had increased much more than normal during this time." *Id*. Mr. Caporusso was also severely disturbed by the state of global affairs "with riots destroying businesses in NYC, along with seeing friends and family being put out of work, along with the pandemic had impacts on me at this time." *Id*.

Mr. Caporusso continually asks himself how he can show the Court deciding his fate that he is "in no way a danger to anyone." *Id*. He comes to the conclusion that he "can only fall back

on my history in life in never having these problems before. I have never used violence toward anyone," and "would never intentionally cause anyone any harm." *Id*. These are not empty words. Mr. Caporusso showed that he is not a danger to anyone in the over one hundred (100) days that followed from the voicemail left on May 14, 2020, until his arrest on August 31, 2020. Additionally, Mr. Caporusso was interviewed on May 20, 2020, six (6) days after the voicemail was left. The government chose not to arrest Mr. Caporusso until August 31, 2020, and in that time, Mr. Caporusso took absolutely no action whatsoever in furtherance of the threats made in the voicemail.

Mr. Caporusso  asks this Court for "mercy," and humbly states that "it is not who I am. I know during the time this happened, I was not myself and under impacts that affected my thinking, causing me to be irrational." *Id*.

In addition to Mr. Capporusso's letter to this Court, included in Exhibit A is a separate apology letter directly to Judge Sullivan and his staff. He directly and humbly writes, "I cannot express enough how completely sorry I am for the incident that happened in May, 2020. Deep remorse and regret of the kind I have never felt have consumed me. I cannot express enough that I am in no way a person who would intentionally cause harm to anyone." *See* Exhibit A. Mr. Caporusso reassures Judge Sullivan and this Court that he "is not the same person" that he was in May, 2020, and exclaims, "I want to humbly apologize to you, your staff, as well as your families." *Id*. Mr. Caporusso's apology is heartfelt and genuine, and his words have real meaning and contemplation behind them. To illustrate this point, when counsel played the voicemail for Mr. Caporusso for the first time, his reaction was of utter and complete shock and disgust at his own actions. Mr. Caporusso could not even believe that it was his own voice saying those horrific words.

**B.  Mr. Caporusso's History and Characteristics.**

Mr. Caporusso has been a hardworking, God-fearing, productive member of his community his entire life, and it is without question that the instant offense is an extreme aberration from the life Mr. Caporusso has lived. One after another, the letters of support paint a portrait of a good, moral man who made one absolutely terrible mistake, and is atoning for his actions and trying to move forward as best he can. *See* Exhibits B-X.

Patricia Caporusso, Mr. Caporusso's wife, tells how she and Mr. Caporusso met in high school, how their friendship started, and how it blossomed into a thirty-one (31) year marriage. *See* Exhibit B. Mrs. Caporusso describes her husband as a "loving and caring father," a "wonderful son," "an extremely hard worker," and a devoted brother. *Id*. Mrs. Caporusso details how dedicated Mr. Caporusso is to his brother, explaining that "he is the legal guardian to his developmentally disabled younger brother" and "he has been taking care of John all of his life." *Id*. Mrs. Caporusso knows "better than anyone" "how extremely out of character this is for Frank," and that he expresses "sorrow and regret" every time they speak. *Id*.  Mrs. Caporusso provides further insight into the accident in January of 2020, and the effects it had on Mr. Caporusso's overall personality. *Id*. ██████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████ and "he became irritated very easily." *Id*. "To make matters worse, he started to drink as well." *Id*. She believes it was a combination of all these factors that led to Mr. Caporusso making the terrible mistake he is before the Court for today. *Id*.

Nevertheless, she stands by her husband and knows in her heart that he is "a kind, generous, and loving person." *Id*.

Vito Caporusso, Mr. Caporusso's second cousin, writes about Mr. Caporusso's dedication to his family and his ability to relate to all family members, regardless of their native language. *See* Exhibit C. "When Frank got married to Patricia, he even learned to speak Spanish so he could have conversations with her family." *Id*. Vito attributes the change in the "sweet and loving character" of Mr. Caporusso ██████████████████████████████ *Id*. "He could no longer work actively. I believe that this might have led in part with his illegal action." *Id*. On a trip a few years ago, Vito remembers the impression Mr. Caporusso's son left on him following the visit. He was "a lively and lovely child," and was "smart and well behaved." *Id*. Vito believes this is a true testament of a "good upbringing by his father [Mr. Caporusso] and mother." *Id*.

Marie Caporusso, Mr. Caporusso's cousin, reiterates the sentiments of her family, knowing Mr. Caporusso as "a hardworking man" and "an excellent father who has brought up two remarkable children." *See* Exhibit D. She remembers happy times from their childhood as they grew up only "four houses apart," and saw each other on a "regular basis." *Id*. Marie "strongly believes that this experience has made Frank reflect on what he has done and how it has impacted him and his family, both emotionally and financially." *Id*. Marie recalls how much responsibility Mr. Caporusso assumed at a young age. *Id*. "Growing up, a lot of responsibility fell on Frank in regard to his younger brother, who has many learning and emotional disabilities. Frank watched over his brother as his parents worked, he even went to the same day camp as his brother so he could keep an eye on him." *Id*. Despite the current situation, she believes Mr.

Caporusso to be an "honorable individual, a valuable member of my family, and a good human being." *Id*.

John Caporusso, Mr. Caporusso's brother, echoes the sentiment of Mr. Caporusso's wife. *See* Exhibit E. " My brother Frank is a devoted father, son, and brother, who has played the role of my legal guardian for eleven (11) years." *Id*. John attributes his hard-working ethic to his brother's guidance and is ever grateful for his continuous support. *Id*. "Frank has stepped up as my guardian to help assist me with my financials, relationships, bringing me to the doctors, work, and has even supported me to go back to school to get my Associates degree." *Id*. John strongly believes in his brother's "good moral character" and recalls a scary incident when he was "kidnapped." *Id*. "Frank notified the police and, with the police's help, was able to locate me and keep me safe." *Id*. John needs his brother back home and misses him terribly. *Id*.

Philip Caporusso, Mr. Caporusso's cousin and guardian of John Caporusso's property, has known Mr. Caporusso his entire life and works very closely with Mr. Caporusso. *See* Exhibit F. Philip recalls Mr. Caporusso as a "respectful and honest" child who was "never in trouble growing up." *Id*. For Philip, Mr. Caporusso is a "hard worker," respected by his colleagues and customers for his dedication. *Id*. This case has left Philip " deeply disappointed and confused by what has occurred." *Id*. "I am disappointed because the behavior is unacceptable," but "I am confused because it is completely out of character for Frank Caporusso." *Id*. Philip is "very confident that this event is isolated and will never happen in the future." *Id*. Philip wrote to counsel in May, 2021, explaining how difficult it is not having Mr. Caporusso home to help care for John. *Id*. John's medications need to "be carefully monitored or they could have negative effects." *Id*. John was seen falling asleep at a counseling session, and they had to move him from independent living to supervised living in order to keep a closer eye on him. *Id*. Mr. Caporusso is

the only one who lives close to John and can monitor him on a daily/weekly basis. *Id*. As Philip

writes, "I personally am overwhelmed by the situation and doing the best I can, as is Dr. Phil. As

we approach sentencing, I hope the judge can see that the task at hand is impossible without

Frank." *Id*.

Grace Tocci is dating Mr. Caporusso's son, Nicholas, and has known Mr. Caporusso for

two (2) years. *See* Exhibit G. She has a front-row seat to who Mr. Caporusso is daily, "a man of

great integrity" who "is extremely dedicated to his family and work." *Id*. She tells of Mr.

Caporusso's generosity by telling the Court the story of how Mr. Caporusso offered for her to

stay in their home while she was transitioning to college and even "helped purchase furniture"

for her room. *Id*. She is inspired by watching Mr. Caporusso be "an amazing caregiver and role

model to his developmentally disabled brother, John Caporusso." *Id*. She believes Mr. Caporusso

to be "an honest, honorable, and a loving human being," who is deserving of this Court's

leniency.

Eric Kardovich is a lifelong friend of Mr. Caporusso. *See* Exhibit H.  Mr. Kardovich

views Mr. Caporusso as family and writes that he was "shocked" when he heard of Mr.

Caporusso's charges and conviction, saying "his actions do not even remotely represent the

person that he is.". *Id.* He believes Mr. Caporusso's actions "indicate a onetime egregious

mistake and lapse of judgment." *Id*. Mr. Kardovich is genuine in his description of Mr.

Caporusso as a "loving husband, a dedicated father to two terrific kids, a caring older brother …

and an extremely hard worker who will do anything for his family and friends." *Id*. Having

spoken to Mr. Caporusso while he has been incarcerated, Mr. Kardovich is "certain he

wholeheartedly regrets" his actions in this case and that he will "be an even more productive and

better member of society" when he is released. *Id*. He "still believes Frank to be an honorable individual and a family man whose family and younger brother depend on and love." *Id*.

Vito L. Caporusso, Mr. Caporusso's uncle, knows his nephew as a "devoted husband" and dedicated father. *See* Exhibit I. Vito writes that this crime is "not characteristic of who he is," and he "thanks God" that "no one was physically injured." *Id*. He does "not condone what Frank did", and is "convinced that Frank could not complete his actions." *Id*. He knows "Frank regrets what has transpired and the effect it has on his family." *Id.*

Lonny Clark, a client and friend of Mr. Caporusso's, writes, "Frank Caporusso has continually demonstrated that he is a dedicated husband and doting father, and his family is his whole world." *See* Exhibit J.  Mr. Clark reflects the sentiment expressed by Mr. Caporusso's family. *Id.*  "He took amazing care of his father when he was dying of cancer, and he also is the main advocate for his learning-disabled younger brother. Mr. Caporusso has carried a great burden for his family, with determination and fortitude that is unquestionable and long-suffering." *Id.* These positive character traits are why Mr. Clark has "not only become a close, trusted friend," but considers Mr. Caporusso as "part of his family," as well.  *Id.*

Jim Kotsailidis, a good friend and neighbor of Mr. Caporusso for over fifteen (15) years, describes him as "a strong family man who has shown to be a great loving father to his two children … he is sensitive at heart." *See* Exhibit K. Mr. Kotsailidis remembers many neighborhood gatherings where Mr. Caporusso would "bring out a positive energy" and always "with a great sense of humor." *Id*. When Mr. Kotsailidis was diagnosed with cancer in 2009, Mr. Caporusso "was there for me with love and support, a time where I needed a friend like him to make me laugh and keep my mind at ease." *Id*. Mr. Kotsailidis uses a plethora of other adjectives to describe the character of Mr. Caporusso, including but not limited to "kindness," "integrity,"

"genuine," and "a trustworthy gentleman." *Id*. He "strongly believes" that this offense is entirely "out of character" for the man he knows and respects. *Id*.

Andrea McNaught was separated from her husband of twenty (20) years when she first met Mr. Caporusso and his wife Patty at a New Year's Eve Party. *See* Exhibit L. She immediately connected with both Mr. Caporusso and his wife over being able to "vent my feelings." *Id*. Mr. Caporusso, in particular, provided her comforting and encouraging words and advice on "being able to stand on my two feet after twenty (20) years of marriage." *Id*. Like other writers, Ms. McNaught shares a very personal story of the difficulties she faced when her daughter, who suffers from "Asperger's, ADHD, bipolar, and several other behavior disorders, tried to commit suicide." *Id*. She recalls how Mr. Caporusso shared his wisdom dealing with the same issue with his daughter as an adolescent and how he "was there every step of the way to support me." *Id*. Ms. McNaught, like others as well, was "shocked" upon hearing of Mr. Caporusso's actions in this case and knows that he is "extremely regretful … and has learned his lesson." She states that Mr. Caporusso "is very respectful of everyone always" and "is more of the type to save someone from a battle, not start one." *Id*.

Christopher Mullinax is "proud" to write the Court about his very good friend, Mr. Caporusso. *See* Exhibit M. Mr. Mullinax describes Mr. Caporusso as a "true friend" who has "been there for me more times than I could count." *Id*. He echoes the sentiments of many others as it pertains to Mr. Caporusso as a family man – a "faithful" husband and a "great father." *Id*. He explains that Mr. Caporusso's job "has stuck with him through his incarceration" and that that fact alone speaks to the "kind of work ethic he has." *Id*. Mr. Caporusso is "a caring man who everyone who meets him, loves him." *Id*. Mr. Mullinax is confident that "this experience has changed him," and he does not believe "he would ever do anything like this" again. *Id*. Dawn

12

Mullinax also writes a letter in support of Mr. Caporusso. *See* Exhibit N. She shares many of the same sentiments as her husband, Christopher, and writes that Mr. Caporusso is "a loving, caring man who wouldn't hurt a fly." *Id*. She states that Mr. Caporusso is "an upstanding person who knows that the mistake he did was wrong" and that "he feels remorseful." *Id*. Ms. Mullinax does not believe that Mr. Caporusso is the type of man "who deserves to go to prison." *Id*.

Peter Nabel, a friend for over six (6) years and a twenty (20) year military veteran, tells the Court that Mr. Caporusso is "a man I trust," a "true gentleman" who "loves his country." *See* Exhibit O. Mr. Nabel proclaims to know Mr. Caporusso well and unequivocally states that Mr. Caporusso "is completely incapable of the actions he stated." *Id*. He is "absolutely certain" that once released, Mr. Caporusso "would not violate the law again." *Id*. He explains how Mr. Caporusso learned a "tough lesson" and "does not want to put his wife and children through this again." *Id*. Mr. Nabel asks the Court for its leniency and says that "it would be well-warranted" because "Frank is a solid, stand-up guy that made a stupid mistake" and "deserves the chance to right himself." *Id*.

David Shouler provides a unique perspective to the Court, having attended high school since the 9th grade with Mr. Caporusso and then subsequently teaching Mr. Caporusso's children. *See* Exhibit P. Mr. Shouler reemphasizes some of the issues that Mr. Caporusso brings up in his letter to the Court. *Id*. "Frank in recent years has taken on too much," and "I felt like he never got to turn it off." *Id*. Describing Mr. Caporusso as a "kind soul," Mr. Shouler believes that "so many of the things that were going on in his life" built up into the instant offense. *Id*. Mr. Shouler has also spoken to Mr. Caporusso "many times in recent months" and is proud that Mr. Caporusso's faith has become a refocused central point to his everyday living. *Id*. He really looks forward "to

the day when Frank can begin to do what he always has done, be a hard-working family man who contributes to society." *Id.*

Michael DeRosa, a lifelong friend of Mr. Caporusso, has known him for over forty (40) years. *See* Exhibit Q. Mr. DeRosa holds Mr. Caporusso in the highest esteem saying, "he is as devoted a father, husband, brother, and friend as anyone that I have ever known." *Id.* Mr. DeRosa is also aware of the effect Mr. Caporusso's incarceration has had on his family, specifically his brother, John. "Although John lives independently, he gets himself into situations that are the result of people using his disability to take advantage of him. Frank has told me that his brother is struggling since Frank has been in jail." Mr. DeRosa also speaks to Mr. Caporusso's "kindness, humor, integrity, and most recently humility and remorse." *Id.* Mr. DeRosa "misses his friend" and plans "to do all he can to help him, including never pressuring or encouraging him to even "just have one beer." *Id.*

Alice Garguola has known Mr. Caporusso for five (5) years. She describes him as a very loving and thoughtful guy. *See* Exhibit R. Ms. Garguola writes, "he is always willing to open up his home to anyone in need and there with a helping hand." *Id.* She knows that Mr. Caporusso has learned the lesson of thinking before he speaks, and that he "recognizes the severity of his words and the damage" it has caused. *Id.*

Joanie Pappacoda, along with her husband Salvatore, has known Mr. Caporusso and his wife, Patty, for almost twenty (20) years. *See* Exhibit S. Their families have "shared many trips, gatherings, and milestones such as communions, confirmations, and graduations." *Id.* She mentions how Mr. Caporusso's family has "been there for us when needed" and is proud to be there for them in Mr. Caporusso's time of need. *Id.* They too believe that the offense "is certainly out of character for him," and they hope the Court "shows some leniency." *Id.*

14

Peter and Danielle Greco have been friends and neighbors of the Caporusso family for nineteen (19) years. *See* Exhibits T and U. The Greco's consider themselves extremely lucky to have such wonderful neighbors surrounding their family. *Id*. As neighbors, the Greco's are uniquely situated in their perception of Mr. Caporusso and his family. *Id*. The Greco's write that "his children are a true testament to his undoubtably [sic] role as a father and mentor to them." *Id*. They know Mr. Caporusso accepts responsibility for his actions and is ready to get back home to his loving and welcoming family. *Id*.

Maik Jornitz, also a neighbor of Mr. Caporusso, likewise reiterates the positive character of Mr. Caporusso. *See* Exhibit V.  He writes, "as much as I do not understand Frank's action, moreover, find them appalling, I cannot judge what happened to him, as this is not how I know him." *Id*. Mr. Jornitz knows Mr. Caporusso as "calm and collected," a mediator within their neighborhood." *Id*. Mr. Janitz strongly believes in the "God-loving man" that Mr. Caporusso is and knows that Mr. Caporusso is extremely remorseful and sorry for what he did. *Id*.

Glenn Allen, Mr. Caporusso's friend of forty-one (41) years, holds Mr. Caporusso in the highest regard, calling him "extraordinary." *See* Exhibit W. For Mr. Allen, Mr. Caporusso is a role model. *Id*. "Early on in our relationship, he taught me the value of hard work when he got me my first job at 7-11 and taught me how to do it with honor and integrity." *Id*. As one of Mr. Caporusso's oldest friends, Mr. Allen has first-hand knowledge of Mr. Caporusso's strong character, a trait Mr. Caporusso has always possessed. *Id*. "Throughout high school, he would consistently go out of his way for me and others, always giving his time and energy without seeking credit." *Id*. These positive character traits are still present in Mr. Caporusso, even as an adult. *Id*. "As a married man of twenty-eight (28) years, I know that this takes a lot of "giving" on both sides of the aisle. In Mr. Caporusso's case, I never doubted that he would succeed in

both marriage and in raising his children." *Id*. Even with Mr. Allen, Mr. Caporusso "has

repeatedly spoken about his regret for what he did," which is consistent with the " extraordinary

person" Mr. Allen admires. *Id*. The kind of person who took care of his brother, parents when

they were ill, and even bringing the local football team to church the night before a big game. *Id*.

Sean Conley, a close friend of Frank Caporusso's for over forty-two (42) years, writes,

"Frank is one of the most decent and kind people I've had the pleasure to know." *See* Exhibit X.

Similar to Glenn Allen, Mr. Caporusso helped Mr. Conely to obtain his first job. *Id*. Mr.

Caporusso's "kindness, generosity of spirit and responsibility and commitment to his family is

why he has maintained many close friends since grade school." *Id*. Mr. Caporusso's gentle and

witty personality and steadfastness as a family man are endorsed by Mr. Conley.  "Never once

have I heard Frank complain about John's challenges and the stress that this has placed on he and

Patty. More importantly, Frank has never shirked his responsibility to John's care and well-being

in addition to his family." *Id*. Mr. Conley is confident that "Frank will continue to be a

productive member of society and will continue to fulfill his duty and obligations to his wife and

family," and he hopes that Mr. Caporusso is given the chance for "redemption." *Id*.

It is clear that Mr. Caporusso is a driven and dedicated husband, father, brother, friend,

colleague, and neighbor who made a terrible mistake. He is a role model to everyone and is the

type of person who is deserving of this Court's leniency.

### C.  Mr. Caporusso Poses Little or No Risk of Recidivism.

Of all the purposes of sentencing, the need to protect the public from further crimes of the

defendant is one of great practical concern and is the most capable of being measured.

Fortunately, Mr. Caporusso does not fit the archetype of a person who will commit new criminal

offenses or recidivate. And because of the reinvigorated role of the judiciary in sentencing,

judges can now impose sentences that take such research into consideration to more effectively impose sufficient, but not greater than necessary, sentences.

The judiciary's bolstered role is especially important given the Commission's own findings that "there is no correlation between recidivism and Guidelines' offense level.  Whether an offender has a low or high guideline offense level, recidivism rates are similar.  While surprising at first glance, this finding should be expected as the Guidelines' offense level has long been recognized as not intended or designed to predict recidivism."  *U.S. Sentencing Comm'n, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* at 15 (May 2004) (hereinafter *Measuring Recidivism*).  Thus, the guidelines are at odds with 18 U.S.C. § 3553(a)(2)(C).  Accordingly, *Booker* has freed the judiciary to remedy this inconsistency.

In addition to what has already been described about Mr. Caporusso's character demonstrating his ability to reform, the Commission has also objectively quantified his low likelihood of recidivism.  For example, the Sentencing Commission's study confirms that recidivism rates decline relatively consistently as age increases.  *See Measuring Recidivism* at 12.  More specifically with respect to Mr. Caporusso, who is 53 years old, defendants over the age of 50 with no criminal history have a recidivism rate of only 6.2 %.  *Id.* at 28.  There is, quite simply, nothing in the record to make this Court reasonably believe that Mr. Caporusso would commit any criminal offense in the future.

The Commission has also found that first offenders like Mr. Caporusso are rarely reconvicted of a crime.  In fact, only 3.5% of first offenders with zero criminal history points are ever reconvicted.  *U.S Sentencing Comm'n, Recidivism and the First Offender* at Exhibit 6 (May of 2004) (hereinafter *First Offender*).  Only 11.7% of all first offenders ever find themselves

back in the criminal justice system (defined as reconviction, re-arrest, or revocation). *First Offender* at Exhibit 6. This is Mr. Caporusso's first felony conviction, and the experience taught him a valuable life lesson to ensure he does not repeat the mistakes of the past.

It is unfortunate that the Guidelines' offense levels do not take into consideration such data. This data exists yet is not utilized to inform the Commission's rulemaking. However, without even considering the circumstances of the offense, it is apparent that Mr. Caporusso is not a person who is statistically likely to recidivate. And when one considers such statistics in light of Mr. Caporusso's history, it is safe to assume that he will never again be arrested or charged with an offense.

**D.  Mr. Caporusso's Public Demise Serves as Adequate Deterrence to Others.**

Section 3553(a)(2)(B) requires the Court to consider "the need for the sentence imposed to afford adequate deterrence to criminal conduct." There is no need for personal deterrence in this case as Mr. Caporusso is simply not the type of person who would commit any further crimes in the future. Mr. Caporusso has absolutely no criminal history and this experience has been a defining moment in his life. Arguably, the government already substantially achieved the maximal deterrent effect of Mr. Caporusso's offense simply by charging and convicting him. As a result, Mr. Caporusso's name and the substance of his offense will be discussed in numerous conversations and settings among family and friends and within certain professional environments for years to come, a shameful reality from which he simply cannot escape. In short, Mr. Caporusso's public demise sends a strong message to anyone foolish enough to attempt to threaten any public official.

Although Mr. Caporusso did not follow through on the threat he made to Judge Sullivan in the over one hundred (100) days from leaving the voicemail until his arrest, his completely

unacceptable words struck palpable fear into Judge Sullivan, his family, and his staff. Mr. Caporusso understands wholeheartedly that this type of activity cannot be tolerated in a democracy. Understanding the Court needs to send a strong message to the public regarding such inciting and threatening language, particularly in light of the tragic events involving Judge Salas in New Jersey and the recent events that took place on January 6, 2021; Mr. Caporusso has been incarcerated for nearly a year at this point, and a sentence of time served sends that message.

Accordingly, Mr. Caporusso, by and through undersigned counsel, respectfully requests that the Court impose a sentence of time served in this matter.

Respectfully submitted,


_____/s/_____

David Benowitz
Bar # 451557
*Counsel for Frank Caporusso*
Price Benowitz LLP
409 7th Street, NW,
Suite 200
Washington, DC 20004
O: (202) 417-6000
M: (202) 271-5249
F: (202) 664-1331
David@PriceBenowitz.com

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 13th day of July 2021, I caused a true and correct copy of the foregoing Defendant's Memorandum in Aid of Sentencing to be delivered via ECF to Assistant United States's Attorney Rachel Fletcher, United States Attorney's Office, 555 4th Street, NW, Rm. 4840, Washington, D.C. 20530.


_____/s/_____
David Benowitz